UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RUSSELL E.D. ROBINSON,           )
                                 )
            Plaintiff,           )
                                 )
    v.                           )   Civil Action No. 06-2050 (EGS)
                                 )
ATTORNEY GENERAL OF THE          )
UNITED STATES, *et al.*,         )
                                 )
            Defendants.          )

**MEMORANDUM OPINION**

This matter is before the Court on the parties' cross-motions for summary judgment. The Court will deny plaintiff's motion, and will grant defendants' motion in part and deny it in part without prejudice .[1]

I.  BACKGROUND

Plaintiff submitted requests under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, to the United States Marshals Service ("USMS"), the Federal Bureau of Investigation headquarters ("FBIHQ"), the Drug Enforcement Administration ("DEA"), the Federal Bureau of Prisons ("BOP"), and the Executive Office for United States Attorneys ("EOUSA").[2]  *See* Compl. at 2; Defendants' Memorandum in Support of Defendants' Motion for

---

[1]      The Court denies plaintiff's cross-motion for summary judgment because it does not comply with the local rules of this Court.  Plaintiff provides neither a statement of points and authorities, nor a proposed order, nor a statement of material facts as to which he contends there is no genuine issue, as are required under Local Civil Rules 7(a), 7(c), 7(h) and 56.1.

[2]      In his complaint, plaintiff identifies the defendant agency components by referencing the case number assigned to the administrative appeal of each component's initial response to his FOIA request; among these is a reference to FOIA/PA Appeal #06-0476.  Compl. at 2.  He incorrectly states that this appeal pertains to his FOIA request to the BOP; actually, this number is that assigned to the appeal of the FBI's response to his FOIA request.  Defs.' Mot. at 2 n.1.

(continued...)

1

Summary Judgment ("Defs.' Mot.") at 2.  Generally, he sought information pertaining to two individuals: Ishmael "Chuku" Brathwaite and Alvin "Tatoo" Hodge, identified by plaintiff as confidential informants.  *See* Compl. at 2-3; Special Visitation Brief Seeking Summary Judgment [Dkt. #17] at 2.

### A.  United States Marshals Service

On October 14, 2005, plaintiff submitted a FOIA request to the USMS for records pertaining to himself.  Defs.' Mot., Declaration of William E. Bordley ("Bordley Decl.") ¶ 2.  Specifically, he sought records pertaining to: (1) his transport by the USMS during and after his trial in the Virgin Islands, and (2) the removal of Mr. Hector Rivera, Sr. by the USMS from the courtroom.  *Id.*, Ex. A (October 14, 2005 FOIA Request).  With additional forms to verify his identity, plaintiff indicated that he also sought "ANY AND ALL REPORTS/ DIRECTIVES, ORDERS AUTHORISATIONS, ETC. compiled by the [USMS] Special Operations Group that [] authorized them to transport [plaintiff] in substandard aircraft," the conditions under which he was transported by armored vehicle and by United States Coast Guard helicopter, and his detention in a holding cell at the federal courthouse.  *Id.*, Ex. C (November 1, 2005 letter to W.E. Bordley) (capitalization in original).  A search of the USMS' records located 226 pages of records.  Bordley Decl. ¶¶ 6, 11.  Of these 226 pages, the USMS released to plaintiff 99 pages in full, released 119 pages in part, withheld four pages in full, and referred four pages to the BOP.  *Id.* ¶ 17 & Ex. E (May 19, 2006 letter from W.E. Bordley, Associate General Counsel/FOIPA Officer, Office of General Counsel, USMS).

---

[2](...continued)
Defendants interpret this error as plaintiff's failure to challenge any response he may have received from the BOP and therefore does not address the BOP's response in their motion.  *Id.*  Defendants' interpretation is overly narrow, given plaintiff's *pro se* status and the liberal construction of *pro se* pleadings.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The Court construes plaintiff's complaint to include a challenge to the BOP response to his FOIA request, and defendants will be ordered to address this matter in a subsequent motion.

### B. Federal Bureau of Investigation

Plaintiff submitted a FOIA request to the FBIHQ for information pertaining to a confidential informant, Ishmael "Chuku" Brathwaite, and documents prepared by Special Agent Robert Lasky about another individual, Alvin "Tatoo" Hodge. Defs.' Mot., Declaration of Peggy L. Bellando ("Bellando Decl.") ¶ 5 & Ex. A (October 14, 2005 FOIA Request). FBIHQ staff deemed the request as one "seek[ing] access to investigatory records concerning third parties," and in accordance with agency policy, neither confirmed nor denied the existence of such records. Bellando Decl. ¶ 11. Pursuant to 28 C.F.R. § 16.3, a person "making a request for records about another individual [must submit] either a written authorization signed by that individual permitting disclosure of those records [] or proof that that individual is deceased (for example, a copy of a death certificate or an obituary)." Absent such authorization from or proof of death of Mr. Brathwaite or Mr. Hodge, the FBIHQ concluded that disclosure of law enforcement records about them, if any, "could constitute an unwarranted invasion of [their] personal privacy" for purposes of FOIA Exemption 7(C), or "would constitute a clearly unwarranted invasion of their personal privacy" for purposes of FOIA Exemption 6. Bellando Decl. ¶ 11. The FBIHQ's decision was upheld on administrative appeal. *Id.* ¶¶ 7-8 & Ex. E (November 27, 2006 letter from D.J. Metcalf, Director, Office of Information and Privacy, Department of Justice).

### C. Executive Office for United States Attorneys

Plaintiff sought EOUSA records pertaining to six individuals whom he believed to be confidential informants. *See* Defs.' Mot., Declaration of John W. Kornmeier ("Kornmeier Decl.") ¶ 4 & Ex. A (February 22, 2003 FOIA request).[3] Relying on FOIA Exemption 7(C), the

---

[3] The EOUSA received plaintiff's FOIA request on March 6, 2006. The reason for the delay in receipt of plaintiff's FOIA request is not explained in the record.

3

EOUSA denied plaintiff's request because he had not provided written authorizations from these individuals for release of records about them. *Id.* ¶ 5 & B (June 13, 2006 letter from W.G. Stewart III, Acting Assistant Director, Freedom of Information & Privacy Act Staff, EOUSA) at 1. The EOUSA's decision was upheld on administrative appeal. *Id.* ¶ 6 & Ex. C (September 28, 2006 letter from D.J. Metcalf, Director, Office of Information and Privacy, Department of Justice).

### D.  Drug Enforcement Administration

Plaintiff submitted a FOIA request to the DEA for, generally, information pertaining to Ishmael "Chuku" Brathwaite, identified by plaintiff as a "Cooperating Source" or a "confidential Informant [] attached to the HIDTA task force in St. Thomas & Miami[,] Florida." Defs.' Mot., Declaration of William C. Little, Jr. ("Little Decl."), Ex. A (October 14, 2005 FOIA Request). In addition, plaintiff sought documents pertaining to Alvin "Tatoo" Hodge, who according to plaintiff, furnished information for or during plaintiff's criminal prosecution. *Id.*, Ex. A. Relying on FOIA Exemptions 6 and 7(C), the DEA did not process plaintiff's request; it neither confirmed nor denied the existence of records pertaining to these two individuals. *Id.* ¶ 14 & Ex. B (November 2, 2005 letter from K.L. Myrick, Chief, Operations Unit, FOI/Records Management Section, DEA). The DEA's decision was upheld on administrative appeal. *Id.* ¶¶ 15-16 & Ex. E (November 15, 2006 letter from D.J. Metcalf, Director, Office of Information and Privacy, Department of Justice).

In this action, plaintiff challenges the agencies' responses to his requests. *See* Compl. at 4.


## II.  DISCUSSION

### *A.  Summary Judgment Standard*

The Court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits may be accepted as true, unless the opposing party submits his own affidavits or documentary evidence that contradict the movant's assertions.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (citing *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact with regard to the agency's compliance with the FOIA.  *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citing *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), *reh'g denied*, 763 F.2d 1436 (D.C. Cir. 1985)).  The Court may award summary judgment based solely upon the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other

documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B. The United States Marshals Service's Search for Responsive Records

In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. *Steinberg*, 23 F.3d at 551. To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id*. at 127. If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt,* 897 F.2d at 542.

Evidently USMS staff determined that there were three systems of records likely to contain records pertaining to a prisoner who had been in its custody: the Justice Prisoner and Alien Transportation System ("JPATS"), the Prisoner Processing and Population Management/Prisoner Tracking System ("PPM/PTS") (JUSTICE/USM-005), and the Warrant

Information Network ("WIN") (JUSTICE/USM-007). Bordley Decl. ¶¶ 6-7. JPATS records pertain to the transportation of sentenced prisoners in BOP custody and aliens in Immigration and Customs Enforcement custody. *Id.* ¶ 6. PPM/PTS and WIN records pertain to the USMS' "execution of Federal arrest warrants, investigation of fugitive matters, and receipt, processing, transportation, and custody of federal prisoners from the time of their arrest by a U.S. Marshal or their remand to a U.S. Marshal by the court until the prisoner is committed by the court to the Attorney General for service of sentence, otherwise released from custody or returned to custody of the U.S. Parole Commission or Bureau of Prisons." *Id.* ¶ 7. Records maintained PPM/PTS and WIN include personal data (such as criminal history records on subjects of investigatory interest), witness interviews, and other records regarding USMS "efforts . . . to locate and apprehend individual fugitives and other wanted persons, and records of criminal custody by the USMS." *Id.* ¶ 8. These records also include those "generated by the USMS Special Operations Group to the extent that USMS SOG personnel were involved in locating, or apprehending a fugitive." *Id.* One searches these records electronically using the subject's name and registration number. *Id.* ¶ 10.

Using plaintiff's name and registration number as search terms, USMS staff located 226 pages of records in JPATS and in offices in the Districts of Puerto Rico and the Virgin Islands. Bordley Decl. ¶¶ 6, 11. Of these 226 pages, the USMS released to plaintiff 99 pages in full, released 119 pages in part, withheld four pages in full, and referred four pages to the BOP. *Id.* ¶ 17.

Plaintiff's opposition does not address the adequacy of the USMS' search for responsive records. *See generally* "Special Visitation Affidavit Under the Pains and Penalties of Perjury Pursuant to Title 28 U.S.C. § 1746, and Before Almighty God; In Opposition to Defendant's

'Motion for Summary Judgment'" ("Pl.'s Opp'n"). Rather, plaintiff discusses evidence presented at his criminal trial, information obtained during the criminal investigation, and records previously obtained by plaintiff under the FOIA. *See id.* ¶¶ 1-11, 17-20.

The Court concludes that the USMS conducted an adequate search for records responsive to plaintiff's FOIA request. It is evident from plaintiff's FOIA request that he is a federal prisoner and that he had been transported by the USMS. The supporting declaration establishes that three systems of records, JPATS, PPM/PTS and WIN, were likely to contain information pertaining to and requested by plaintiff, and that USMS staff employed means reasonably calculated to locate responsive records.

### C. Exemptions

#### 1. Exemption 2

Exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Information is "'predominantly internal' if it does not 'purport to regulate activities among members of the public or set standards to be followed by agency personnel in deciding whether to proceed against or take action affecting members of the public.'" *Edmonds v. Fed. Bureau of Investigation*, 272 F. Supp. 2d 35, 50 (D.D.C. 2003) (quoting *Cox v. United States Dep't of Justice*, 601 F.2d 1, 5 (D.C. Cir. 1979)); *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).

Exemption 2 applies to two categories of material: (1) internal agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 369-70 (1976); *see Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d. 1051, 1073-74 (D.C. Cir. 1981).

8

The former, or "low 2" exempt material, includes "administrative markings such as file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references," *Scherer v. Kelley*, 584 F.2d 170, 175-76 (7th Cir. 1978), *cert. denied sub nom. Scherer v. Webster*, 440 U.S. 964 (1979).  It is exempt automatically if it relates to trivial administrative matters of no genuine public interest.  *See Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983).  The latter, or "high 2" exempt material, includes more substantive internal matters, the disclosure of which would "significantly risk circumvention of federal statutes or regulations" *Crooker,* 670 F.2d at 1053, regardless of whether those statutes or regulations are penal or enforcement in nature.  *Schiller,* 964 F.2d at 1208.

      The USMS withholds three types of information under Exemption 2: (1) internal agency case numbers used by investigative agencies to link particular asset records with an ongoing investigation or litigation, (2) Vehicle Identification Numbers associated with assets turned over to law enforcement agencies for official use, and (3) an internal website address to a Justice Department database accessed by federal agencies participating in the Asset Forfeiture Program.  Bordely Decl. ¶ 13.  The USMS meets its threshold burden to show that the information is predominantly internal.  Its declaration is lacking insofar as it does not indicate clearly whether the USMS withholds this information as "low 2" material, or "high 2" material, or both.  If the USMS deems the information "high 2" exempt material, the agency offers at best conclusory statements of the risk of harm, that is, circumvention of laws or regulations, if this information were disclosed.

      The Court will deny without prejudice defendants' summary judgment motion on the USMS' decision to withhold information under Exemption 2.  *See In Defense of Animals v. Nat'l*

*Inst. of Health*, No. 04-1571, 2007 WL 4329474, at *10 (D.D.C. Dec. 12, 2007) (rejecting argument that information pertaining to chimpanzees at a research facility in New Mexico is "high 2" exempt material due to agency's failure to "explain how the requested information could lead to criminal activities").

2. Exemption 7(C)

a. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7. *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982). In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

The declarations submitted on behalf of the USMS, the EOUSA and the DEA expressly state that the records at issue were compiled for law enforcement purposes. Bordley Decl. ¶ 7; Kornmeier Decl. ¶ 7; Little Decl. ¶¶ 18-19. The declaration submitted on behalf of the FBIHQ includes no such statement, although its staff handled plaintiff's FOIA request as if any responsive records were compiled for law enforcement purposes. *See* Bellando Decl. ¶¶ 10-12. This deficiency is not fatal, however. It is clear from plaintiff's FOIA request that the records he

10

sought pertained to alleged confidential informants and information they provided during the course of a criminal investigation, and to evidence and witness testimony at his criminal trial. The Court concludes that all the records plaintiff requested, to the extent that such records exist, were or would have been compiled for law enforcement purposes.

### b.  Law Enforcement Personnel and Third Parties

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether Exemption 7 applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773).

Under Exemption 7(C), the USMS withholds "the names, telephone numbers, and other information pertaining to USMS and/or government employees (law enforcement officers)." Bordley Decl. ¶ 14. It asserts that release of such information "could subject these individuals to unwarranted public attention, harassment, and annoyance, and would thereby impair the effectiveness of these employees in carrying out their official duties and potentially cause unwarranted attention to them in their private lives." *Id.* Further, release of their identities "could possibly pose a danger to their life or physical safety." *Id.* The USMS offers a similar

rationale to support its decision to "withhold the names, addresses, telephone numbers, and other information on third-party individuals." *Id.* ¶ 15.  Release of information about these third parties could expose them to "unnecessary public attention, criticism, harassment and embarrassment." *Id.*

Redaction of the names of law enforcement personnel under similar circumstances routinely is upheld.  *See Lesar v. United States Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1987) (finding legitimate interest in preserving the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Pray v. Dep't of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995) (finding that "animosity or grudges toward special agents" resulting from release of information outweighed any possible benefit from disclosure), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996).  The names of third parties, too, routinely are withheld under Exemption 7(C).  *See, e.g., Rugiero v. United States Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that agency properly withheld identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure), *cert. denied*, 534 U.S. 1134 (2002); *SafeCard Servs., Inc.*, 926 F.2d at 1206 (holding that "names and address of private individuals appearing in files within the ambit of Exemption 7(C)" are exempt from disclosure).  Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure.  *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-775; *SafeCard Servs., Inc.,* 926 F.2d at 1205-06.  The disclosure of the names of private individuals mentioned in law enforcement files would serve a significant public interest only where "there is compelling evidence that the agency denying the

FOIA request is engaged in illegal activity," and that the information sought "is necessary in order to confirm or refute that evidence." *Davis v. United States Dep't of Justice*, 968 F.2d at 1282.

Plaintiff offers no objection to the withholding of the names of and identifying information about law enforcement personnel or third parties. *See generally* Pl.'s Opp'n. His opposition appears to be directed only at the requests for information pertaining to two individuals: Mr. Brathwaite and Mr. Hodge, *see id.* at 2-4, and the Court will address these arguments in its discussion of the agencies' Glomar responses.

The Court concludes that the USMS properly withheld the names of and identifying information about law enforcement personnel and third parties in the records plaintiff requested.

### c. Glomar Responses

If an individual is the target of a FOIA request, the agency to which the FOIA request is submitted may provide a "Glomar" response: the agency may refuse to confirm or deny the existence of records or information responsive to the request on the ground that even acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy. *See Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995); *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009, 1014-15 (D.C. Cir. 1976). Citing such privacy concerns, the FBIHQ, EOUSA and DEA neither confirmed nor denied the existence of records pertaining to Mr. Brathwaite and Mr. Hodge on the ground that their disclosure without the subjects' written authorization could reasonably be expected to constitute an unwarranted invasion of their personal privacy. *See* Bellando Decl. ¶¶ 11-12; Kornmeier Decl. ¶¶ 8-9; Little Decl. ¶¶ 31-33.

Plaintiff appears to challenge this decision on two grounds. First, plaintiff states that the third parties about whom he seeks law enforcement records are known to him, and that one of these individuals, Mr. Brathwaite, provided allegedly false testimony at his criminal trial. *See* Pl.'s Opp'n at 2-3; Special Visitation Brief Seeking Summary Judgement [sic] ("Pl.'s Mot.") at 2. He argues that "there is no countervailing interest of 'Secrecy as to [Mr. Brathwaite's] identity'" because of his public testimony. Pl.'s Mot. at 2. The fact that plaintiff already knows the identities of third parties who may be mentioned in law enforcement records does not extinguish their privacy interests. *See Weisberg*, 745 F.2d at 1491. Nor does the fact that a third party testified at a public trial waive his privacy interests. *See Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 247 (6th Cir. 1994) (law enforcement employee who chooses or is required to testify does not waive personal privacy); *Lardner v. United States Dep't of Justice*, No. 03-0180, 2005 WL 758267, *19 (D.D.C. Mar. 31, 2005) (concluding that name of witness who testified at public trial properly was withheld under Exemption 7(C)).

Second, plaintiff appears to argue that Mr. Brathwaite's allegedly false testimony at his criminal trial undermines the validity of his conviction, and thus he states a public interest (presumably in the fairness of criminal proceedings) superior to Mr. Brathwaite's privacy interest. *See* Compl. at 2 (alleging that he "was not afforded full and complete discovery" prior to his criminal trial); Pl.'s Opp'n at 2 (stating that "Overiding [sic] public perception and interest overide [sic] any secrecy concerns associated with the withheld documentation concerning 'witnesses' who have already testified in open FEDERAL COURT proceedings"). Plaintiff asserts that the requested records "will conclusively prove the deliberate and knowing use of manufactured testimony" in his criminal case. Compl. at 1. Neither of these arguments is persuasive.

"The courts have consistently refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction." *Burke v. United States Dep't of Justice*, No. 96-1739, 1999 WL 1032814, at *4 (D.D.C. Sept. 30, 1999); *Taylor v. United States Dep't of Justice*, 257 F. Supp. 2d 101, 110 (D.D.C. 2003) (disclosure under the FOIA of potentially exculpatory information that prosecutors must disclose to criminal defendants pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), is in a plaintiff's private interest, not the general public interest), *recons. denied*, 268 F. Supp. 2d 34 (D.D.C. 2003); *Johnson v. United States Dep't of Justice*, No. 85-714, 1991 WL 251940, at *1 (D.D.C. Nov. 13, 1991) (possibility that disclosure of records might reveal that prosecution witnesses at requester's criminal trial were given favorable treatment for their testimony which was not disclosed at trial did not outweigh witnesses' substantial privacy interests).

The Court concludes that the FBIHQ, EOUSA and DEA properly provided Glomar responses to plaintiff's FOIA requests.

### 3. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of California v. United States Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

The declaration submitted in support of the USMS' motion does not address segregability. Although the USMS declarant identifies each document and the number of pages of each document, the Court cannot determine which documents were released in full or in part. Nor can the Court determine which document was withheld in full and the basis for the USMS decision to do so. On this record, Court declines to make a ruling on segregability, and defendants will be directed to address this matter in a subsequent motion.

### III. CONCLUSION

The Court concludes that all the records plaintiff requested are or would have been compiled for law enforcement purposes and, thus, fall within the scope of FOIA Exemption 7(C). Further, the Court concludes that the USMS properly withheld the names of and identifying information about law enforcement personnel and third parties mentioned in the responsive records and that the FBIHQ, EOUSA and DEA properly provided Glomar responses to plaintiff's FOIA request. Defendants' motion is deficient in three respects. The BOP's response to plaintiff's FOIA request is not addressed, and the USMS neither establishes that it properly withheld records under FOIA Exemption 2 nor that it has released all reasonably segregable material. The Court will direct defendants to file a renewed summary judgment motion within 45 days of entry of this Order.

Signed:    EMMET G. SULLIVAN
           United States District Judge

Dated:     February 14, 2008